UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| EDWARD J. SCHIMPF, ) <br> ) <br> Plaintiff, ) <br> ) <br> vs. ) <br> ) <br> MICHAEL J. ASTRUE, Commissioner ) <br> of the Social Security Administration, ) <br> ) <br> Defendant. | CAUSE NO. 1:09-cv-1192-WTL-DML |

## ENTRY ON JUDICIAL REVIEW

Pursuant to 42 U.S.C. § 405(g), Plaintiff Edward J. Schimpf seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner") denying his application for Supplemental Insurance Benefits ("SSI") under Title XVI of the Social Security Act ("the Act"). The Court rules as follows.

## PROCEDURAL BACKGROUND

Schimpf filed his application in September 2005 alleging disability due to a variety of impairments. His application was denied initially and upon reconsideration, whereupon he requested a hearing before an ALJ. The hearing, at which Schimpf was represented by counsel, was held before ALJ James Norris on April 16, 2009. The ALJ issued his decision denying Schimpf's application for benefits on April 27, 2009. After the Appeals Council denied review of the ALJ's decision, Schimpf filed this timely appeal.

## APPLICABLE STANDARD

Disability is defined as "the inability to engage in any substantial gainful activity by reason of a medically determinable mental or physical impairment which can be expected to

result in death, or which has lasted or can be expected to last for a continuous period of at least twelve months." 42 U.S.C. § 423(d)(1)(A). In order to be found disabled, a claimant must demonstrate that his physical or mental limitations prevent him from doing not only his previous work, but any other kind of gainful employment that exists in the national economy, considering his age, education, and work experience. 42 U.S.C. § 423(d)(2)(A).

In determining whether a claimant is disabled, the Commissioner employs a five-step sequential analysis. At step one, if the claimant is engaged in substantial gainful activity he is not disabled, despite his medical condition and other factors. 20 C.F.R. § 404.1520(b). At step two, if the claimant does not have a "severe" impairment (i.e., one that significantly limits his ability to perform basic work activities), he is not disabled. 20 C.F.R. § 404.1520(c). At step three, the Commissioner determines whether the claimant's impairment or combination of impairments meets or medically equals any impairment that appears in the Listing of Impairments, 20 C.F.R. pt. 404, subpt. P, App. 1, and whether the impairment meets the twelve-month duration requirement; if so, the claimant is deemed disabled. 20 C.F.R. § 404.1520(d). At step four, if the claimant is able to perform his past relevant work, he is not disabled. 20 C.F.R. § 404.1520(f). At step five, if the claimant can perform any other work in the national economy, he is not disabled. 20 C.F.R. § 404.1520(g).

In reviewing the ALJ's decision, the ALJ's findings of fact are conclusive and must be upheld by this court "so long as substantial evidence supports them and no error of law occurred." *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001). "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," *id*., and this court may not reweigh the evidence or substitute its judgment for that

of the ALJ. *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997). The ALJ is required to articulate only a minimal, but legitimate, justification for the ALJ's acceptance or rejection of specific evidence of disability. *Scheck v. Barnhart*, 357 F.3d 697, 700 (7th Cir. 2004). In order to be affirmed, the ALJ must articulate his analysis of the evidence in his decision; while he "is not required to address every piece of evidence or testimony," he must "provide some glimpse into [his] reasoning . . . [and] build an accurate and logical bridge from the evidence to [his] conclusion." *Id.*

## DISCUSSION

The ALJ found at step one that Schimpf had not engaged in substantial employment since his application date of September 30, 2005. At steps two and three, the ALJ concluded that Schimpf had "the following severe combination of impairments: diabetes, chronic obstructive pulmonary disease, coronary artery disease, sleep apnea and obesity," but that those impairments did not meet or medically equal a listed impairment. At step four, the ALJ concluded that Schimpf retained the RFC to perform light work that does not require concentrated exposure to respiratory irritants or extensive reading and/or writing. Finally, at step five, the ALJ determined that an individual of Schimpf's age, education, work experience and RFC was capable of performing a significant number of jobs in the national economy, including assembler, inspector, and hand packer. Therefore, the ALJ determined that Schimpf was not disabled.

Schimpf raises a single issue on appeal. Pursuant to the Medical-Vocational Guidelines Rule 202.09, 20 C.F.R. Pt. 404, Subpt. P, App. 2 (hereinafter referred to as "the Grid"), an

individual such as Schimpf who is over fifty years old[1] and has an RFC of light work with no past relevant work is deemed to be disabled if he is illiterate. Schimpf asserts that he is illiterate and therefore the ALJ erred in failing to apply the Grid and find him to be disabled.

Illiteracy is defined by the relevant regulation as follows:

Illiteracy means the inability to read or write. We consider someone illiterate if the person cannot read or write a simple message such as instructions or inventory lists even though the person can sign his or her name. Generally, an illiterate person has had little or no formal schooling.

20 C.F.R. § 416.964(b)(1). Schimpf's testimony regarding his ability to read and write was as follows:

> Q: Can you read?
>
> A: Some small words.
>
> Q: Like with a newspaper, can you pick up a newspaper and make sense of it.
>
> A: No. No.
>
> Q: How much of that – I mean, can you read a full sentence in a newspaper?
>
> A: Not and understand it at the end after I'm done, no.
>
> Q: So what do you, are you picking out certain words?
>
> A: Pick out, that's the way I do it, I pick out words.

---

[1]Pursuant to the Grid, whether an individual is deemed disabled often depends upon which age category he or she falls into. The ALJ found that pursuant to 20 C.F.R. § 416.963 Schimpf fell into the "younger person" category because he was under fifty years old on the date his application was filed in September 2005. However, Schimpf's fiftieth birthday occurred on June 5, 2006, shortly after he filed his application and years before his hearing before the ALJ in April 2009. Once he turned fifty, Schimpf moved into a new category–"person closely approaching advanced age." The ALJ should have considered whether Schimpf was disabled under either age category. *See* 20 C.F.R. § 416.963(b) "(We will use each of the age categories that applies to you during the period for which we must determine if you are disabled.").

> Q: If somebody left you a list of instructions, do this, do that, go to the store, get these items at the store, could you read that?
>
> A: No.
>
> Q: If somebody tells you what to do, do you have any trouble following their instructions?
>
> A: I would get parts and pieces of it.
>
> Q: Okay. As far as writing, can you write a letter to somebody?
>
> A: No. Sign my name.
>
> Q: Now you went through the seventh grade. Not everybody, but most people when they get through the seventh grade know how to read and write. What happened?
>
> A: I lost all interest in it.

Record at 605-06. This testimony would support a finding that Schimpf is illiterate despite the fact that he completed the seventh grade.

The ALJ did not make any express finding with regard to Schimpf's literacy. However, he did find that Schimpf "has a limited education, but is able to communicate in English." Limited education is defined as follows:

> Limited education means ability in reasoning, arithmetic, and language skills, but not enough to allow a person with these educational qualifications to do most of the more complex job duties needed in semi-skilled or skilled jobs. We generally consider that a 7th grade through the 11th grade level of formal education is a limited education.

20 C.F.R. § 404.964(b)(3). The ALJ's only discussion regarding Schimpf's education and intellectual ability is the following:

> [T]he claimant also alleges borderline intellectual functioning also more than minimally interferes with his ability to engage in basic work activity. Indeed, while the record does appear to show the claimant only attended school until the 8th grade, a psychological consultative examiner, Dr. Kurzhals, Ph.D., specifically ruled out borderline intellectual functioning under Axis II in September 2006. Notwithstanding, a limitation has been found in the claimant's residual functional capacity below due to his "limited" education as defined in the regulations. (20 CFR 404.1564(b)(3)).

Record at 17. This finding is not supported by the record. In the report by Dr. Kurzhals cited by the ALJ, he does not opine that Schimpf does not have borderline intellectual functioning. Rather, under AXIS II his diagnosis is "Rule out Borderline intellectual functioning." *Id.* at 165. This does not mean that a diagnosis of borderline intellectual functioning *has been ruled out*, as the ALJ apparently believes, but rather it means that a diagnosis of borderline intellectual functioning *needs to be ruled out*. This is the standard usage of a "rule out" diagnosis, and is also consistent with the body of Dr. Kurzhals' report, in which he states that Schimpf's "level of intellectual functioning is estimated to be within Borderline or perhaps Low Average range." Record at 164.

The ALJ appears to have assumed that because Schimpf finished the seventh grade that he automatically falls into the "limited education" category rather than the "illiterate" category. But if Schimpf actually has borderline intellectual functioning then that would explain how he could have made it through the seventh grade without becoming literate. The ALJ seems to have discredited Schimpf's testimony regarding his reading ability, stating in a footnote: "The undersigned also finds the claimant's past ability to engage in a skilled trade is inconsistent with his allegations of being essentially illiterate. Again, such exaggeration tends to erode the claimant's credibility." Record at 22 n. 3. The "skilled trade" referred to by the ALJ is Schimpf's past work building houses work which, as described as Schimpf, is not at all

6

inconsistent with his claim of illiteracy. Upon questioning by the ALJ, Schimpf explained that he worked in a family business and that he would ride to a job site "with my brothers and everyone" and "I had one brother that done all the laying out and I, I –." *Id.* at 615. At this point the ALJ interrupted Schimpf, asking him if he was "like the framing carpenter," to which Schimpf replied in the affirmative. *Id.* at 616. While framing carpentry generally may be a skilled trade that requires literacy, if Schimpf's brother in fact determined what needed to be done and laid it out for Schimpf to do, that job took a certain amount of skill and knowledge, but not necessarily any reading ability. Therefore the ALJ's only stated reason for finding–implicitly, at least–that Schimpf is not illiterate is not supported by the evidence of record pointed to by the ALJ.

The Commissioner points to additional evidence in the record that he argues contradicts Schimpf's claim of illiteracy, most pointedly a form that appears to have been filled out by Schimpf that certainly required more than the reading ability claimed by Schimpf. "But these are not reasons that appear in the ALJ's opinion, and thus they cannot be used here." *Larson v. Astrue*, 615 F.3d 744, 749 (7th Cir. 2010) (citing *SEC v. Chenery Corp.*, 318 U.S. 80, 87-88 (1943); *Parker v. Astrue*, 597 F.3d 920, 922 (7th Cir. 2010); *Stewart v. Astrue*, 561 F.3d 679, 684 (7th Cir.2009)). The Commissioner points to *Glenn v. Secretary of Health & Human Servs.*, 814 F.2d 387 (7th Cir. 1987) and argues that this Court can uphold the ALJ's determination that Schimpf is not illiterate on grounds not expressed by the ALJ. The Commissioner's reliance on *Glenn* is not unreasonable; it is almost directly on point and the *Glenn* court did, in fact, uphold the ALJ's finding of literacy even while noting that "the administrative law judge did not elaborate his conclusion that Glenn was literate." However, more recent cases have repeatedly

7

criticized "*Chenery* violations" in social security disability cases, *see, e.g., Spiva v. Astrue*, ___ F.3d ____, 2010 WL 4923563 (Dec. 6, 2010) (collecting cases), and have adhered to the principle that the ALJ in his or her decision must build a "'logical bridge' between the evidence and the conclusions." The ALJ failed to do so in this case with regard to the question of Schimpf's literacy.

The question of whether Schimpf is illiterate as defined by 20 C.F.R. § 416.964(b)(1) is dispositive of this case, and yet the ALJ failed to make an express finding on that issue and failed to point to substantial evidence in the record that supports his implicit finding that Schimpf's assertion of illiteracy is false. Accordingly, this case must be, and is, **REMANDED** to the Commissioner for further proceedings consistent with this Entry.

SO ORDERED: 02/03/2011

_William T. Lawrence_
Hon. William T. Lawrence, Judge
United States District Court
Southern District of Indiana

Copies to:

Thomas E. Kieper
UNITED STATES ATTORNEY'S OFFICE
tom.kieper@usdoj.gov

Timothy J. Vrana
tim@timvrana.com